FILED

2022 Feb-17  PM 02:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

AKEEM GUINN,                          )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )       Case No. 4:20-cv-1352-GMB
                                      )
KILOLO KIJAKAZI,[1] Acting            )
Commissioner of Social Security,      )
                                      )
        Defendant.                    )

## MEMORANDUM OPINION

On March 6, 2018, Plaintiff Akeem Guinn filed an application for supplemental security income ("SSI") with an alleged disability onset date of June 1, 2017. Guinn's application was denied at the initial administrative level on April 20, 2018. He then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on October 1, 2019 and denied Guinn's claim on October 28, 2019. Guinn requested review of the ALJ's decision by the Appeals Council, which declined review on July 10, 2020. As a result, the ALJ's decision became the final decision of the Commission of the Social Security Administration (the "Commissioner") as of July 10, 2020.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Guinn's case is now before the court for review pursuant to 42 U.S.C. § 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Federal Rule of Civil Procedure 73, the parties have consented to the full jurisdiction of a United States Magistrate Judge. Doc. 14. Based on a review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be affirmed.

## I. STANDARD OF REVIEW[2]

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted).

---

[2] In general, the legal standards are the same whether a claimant seeks disability insurance benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to reference the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in excerpted court decisions.

"Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Grant v. Astrue*, 255 F. App'x 374, 375–76 (11th Cir. 2007) (citing *Keeton v. Dep't of Health & Human*

*Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).   There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II.  STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 416(i).   A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).   Guinn bears the burden of proving that he is disabled and is responsible for producing evidence sufficient to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a).   The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform his former occupation?

(5) Is the claimant unable to perform other work given his residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, [at] steps three and five, to a finding of disability.  A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)).  "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

### III.  RELEVANT FACTUAL BACKGROUND

Guinn was born on October 6, 1989 and was 28 years old on the date of his application. R. 34.  He lives with his mother and her husband. R. 34.  Guinn completed the eleventh grade and has attempted unsuccessfully to obtain a GED. R. 34–35, 170.  He previously worked at a chicken plant. R. 61.  His primary complaints are outbursts or episodes where he cannot control himself, hallucinations, sleeping trouble, and depressive episodes. R. 35, 40, 45.  In his disability report, Guinn alleges that he is unable to work because of bipolar disorder, psychosis, and affective disorder. R. 169.

The ALJ held a hearing in Guinn's case on October 1, 2019. R. 32.  At the

hearing, Guinn testified that he suffers from hallucinations and outbursts and has trouble sleeping. R. 35, 40.  He reported periods of depression and isolating himself in his bedroom. R. 39, 47.  Guinn testified that he has been isolating himself like this since he was 16 or 17 years old. R. 58.  He also testified that he takes various medications to manage his conditions but maintained that the medications are not completely effective. R. 38–39.  Guinn reported that he stays awake for multiple days at a time approximately three or four times per month. R. 40.  He testified that he hallucinates during these periods, including seeing shadows, having an imaginary friend, and hearing voices. R. 36, 39, 48.

Guinn also testified that he has outbursts or periods where he cannot control himself. R. 42.  During one of these outbursts, he rode his bicycle inside a Wal-Mart store and "preach[ed]" before the police removed him. R. 42.  Another outburst resulted in an arrest for disorderly conduct. R. 53–54.  He testified that he has been hospitalized twice as a result of these outbursts. R. 55.  The first occurred in 2017 after Guinn was in a fight with his father. R. 43.  When he arrived at the hospital, Guinn presented with suicidal thoughts. R. 362.  After receiving medication and participating in therapy, Guinn showed improvement in his depression and was discharged from the facility. R. 352.

The second hospitalization occurred in 2018 after Guinn exhibited bizarre behavior and disorganization at his therapy center. R. 270.  Guinn admitted that he

had been off his medication because his prescriptions had not transferred when he moved. R. 270. Guinn restarted medication and showed improvement such that he was no longer aggressive and interacted well in group settings. R. 270. Guinn reported that he has had verbal altercations with his stepfather and acknowledged that he gets mad if anyone disagrees with him. R. 46, 49. If someone were to say "anything ugly" to him at work, he testified that he would likely have an outburst. R. 56.

Guinn also reported difficulties socializing with others (*see* R. 45–47, 51–52) even though his medical records reflect that he has fathered 13 children. R. 366. On his function report, Guinn indicated that he cleans, does laundry, irons, and does yard work. R. 197. He also reported that he often talks on the phone with his girlfriend and participates in church services every Sunday. R. 199.

Applying the sequential evaluation process, the ALJ found that Guinn has not engaged in substantial gainful activity since his alleged onset date of March 6, 2018 through the date of decision, October 28, 2019. R. 19. At step two, the ALJ found that Guinn suffered from the following severe impairments: schizoaffective disorder, depression, bipolar disorder, and polysubstance abuse under 20 C.F.R. § 416.920(c). R. 19. The ALJ noted that these medically determinable impairments significantly limit Guinn's ability to perform basic work activities. R. 19. At step three, the ALJ found that Guinn did not have an impairment or combination of impairments

meeting or medically equal to the severity of any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 19.

Before proceeding to step four, the ALJ determined that Guinn had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with certain non-exertional limitations: he is able to understand, remember, and apply simple routine instructions and concentrate and persist for extended times in order to complete simple, routine work tasks requiring no more than a GED reasoning level three; and he would need to avoid frequent intense work-related contact with others but would be able to adapt to a routine work setting where changes are infrequent, well explained, and introduced gradually. R. 21.  The ALJ relied on the opinion of a vocational expert to find that there are jobs existing in significant numbers in the national economy that Guinn can perform. R. 24.  Thus, at step five of the five-step sequential process, the ALJ found that Guinn was not disabled within the meaning of the Social Security Act from March 6, 2018, the alleged onset date, through October 18, 2019, the date of the decision. R. 25.

## IV.  DISCUSSION

On appeal, Guinn argues that the ALJ did not correctly evaluate the severity of his mental impairments and their limiting effects because substantial evidence did not support the ALJ's decision to discount his subjective complaints of disability. Doc. 18 at 12.  The court disagrees.  For the following reasons, the court finds that

the ALJ applied the proper standards to reach his conclusions and that substantial evidence supports the ALJ's decision.

The Social Security Regulations provide that a claimant's subjective complaints alone cannot establish disability.  Instead, the regulations describe additional objective evidence that permits a finding of disability.  *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929(a).  Interpreting these regulations, the Eleventh Circuit has articulated a "pain standard" that applies when a claimant attempts to establish disability through his own testimony of pain or other subjective symptoms:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.  If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted).  The ALJ must make credibility determinations regarding a claimant's allegations.  *Fries v. Comm'r of Soc. Sec. Admin.*, 196 F. App'x 827, 833 (11th Cir. 2006).

When determining the credibility of a claimant's testimony as to his symptoms, the ALJ must follow a two-step process:

> First, . . . consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is

> established, . . . evaluate the intensity and persistence of those
> symptoms to determine the extent to which the symptoms limit an
> individual's ability to perform work-related activities.

SSR 16-3p, 81 FR 14166-01, 14167 (Mar. 16, 2016); *see* 20 C.F.R. § 416.929(a).  In

the second step of this process, the ALJ should consider the entire record, including

"the objective medical evidence; an individual's statements about the intensity,

persistence, and limiting effects of symptoms; statements and other information

provided by medical sources and other persons; and any other relevant evidence in

the individual's case record." SSR 16-3p, 81 FR 14166-01, 14168 (Mar. 16, 2016);

*see also* 20 C.F.R. § 416.929(a).  Relevant information from the claimant's medical

sources would include reports of what may precipitate or aggravate the symptoms;

what medications, treatment, or other methods alleviate the symptoms; and how the

symptoms affect the claimant's pattern of daily living. 20 C.F.R. § 416.929(c)(3).

The ALJ also should consider whether there are any inconsistencies in the evidence

and the extent to which the claimant's statements conflict with the rest of the

evidence. 20 C.F.R. § 416.929(c)(4).

    If the ALJ discredits the claimant's subjective testimony, he must articulate

explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225.   And

substantial evidence must support his articulated reasons. *Hale v. Bowen*, 831 F.2d

1007, 1012 (11th Cir. 1987).  In determining whether substantial evidence supports

an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could

have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).  The ALJ is not required to conduct an explicit symptom analysis, but the reasons for his findings must be clear enough that they are obvious to a reviewing court. *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Id.* (citation omitted).

Here, the ALJ found that Guinn's medically determinable impairments could reasonably be expected to cause his alleged symptoms. R. 22.  However, the ALJ found that Guinn's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 22.  The court finds that the ALJ explicitly articulated his reasons for discounting Guinn's claims and that substantial evidence supports his determination.

The ALJ thoroughly examined the medical evidence in determining that Guinn's subjective complaints of pain were not entirely credible. R. 22–23.  The ALJ found that Guinn has depression, schizophrenia, and episodes of serious anti-social behavior, but that these symptoms are controlled with medication. R. 22.  The ALJ further found that the medical records do not support Guinn's testimony that there were a few days per month during which his Trazodone does not work and he

becomes violent. R. 22–23.  The ALJ found that Guinn's allegations were partially consistent with the record evidence, and he integrated Guinn's complaints into the RFC report to the extent that they were consistent with the evidence. R. 23.

The ALJ highlighted various medical records in assessing Guinn's functional limitations.  For example, he summarized notes from a mental status examination at the time of Guinn's 2017 hospitalization, which stated that Guinn demonstrated coherent speech, appropriate behavior, normal concentration, normal memory, and that the examiner estimated below average intelligence. R. 22, 363.  The ALJ also pointed to notes from medical appointments in April and June 2019, during which Dr. Khusro observed that Guinn was cooperative but difficult to engage. R. 22, 303, 557.  Dr. Khusro also indicated Guinn was of average intelligence and had memory and concentration within normal limits. R. 23, 303, 556.

These and other treatment notes lend support to the ALJ's conclusion that Guinn's condition stabilized with treatment and medication. *See Belle v. Barnhart*, 196 F. App'x 558, 560 (11th Cir. 2005) (noting that normal findings on examination support an ALJ's decision to discount subjective complaints); *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.").  For example, the mental health staff at CED Mental Health Center noted in February 2018 that Guinn was "currently stable" and "currently doing well" (R. 285); in

March 2018 that "his thought process are significant for absence of any lethal ideations/overt paranoia/delusions/AV hallucinations" (R. 283); and in April 2018 that "[a]fter receiving treatment, he has stabilized." R. 281.  Additionally, Guinn's medical records from April 2019 indicate that he reported to his provider that his medications were working and he was not suffering any adverse effects. R. 303. During that appointment, he also denied feeling depressed or hallucinating. R. 304. At another appointment in August 2019, Guinn similarly reported that he was doing "ok" and his medications were working. R. 557.  Again, he denied feeling depressed or hallucinating. R. 558.  The provider noted that Guinn reported he was "sleeping a lot better since his Trazodone was increased." R. 558.

The ALJ further found portions of Guinn's testimony and presentation at the hearing to be inconsistent with his allegations. R. 23.  The ALJ observed that Guinn was able to answer questions and relate history at the hearing, that his fathering of 13 children "suggest[s] at least some ability to engage in social situations," that he reported being able to finish what he starts and to follow directions, and that his self-reported daily activities included cleaning, laundry, ironing, and mowing. R. 23. Evidence of social activities may undermine a claim of disabling limitations. *See Meehan v. Comm'r of Soc. Sec.*, 776 F. App'x 599, 603 (11th Cir. 2019) (holding that the ALJ properly found subjective complaints to be inconsistent with a record of basic daily activities).

On this record, the court finds that the ALJ properly evaluated the intensity and persistence of Guinn's mental impairments and their limiting effects.  The ALJ correctly considered "the consistency of [Guinn's] statements" with the remainder of the evidence. *See* SSR 16-3p, 81 FR 14166-01, 14170 (Mar. 16, 2016).  In doing so, he found that the medical records supported a finding that Guinn's condition could be managed with medication.[3]  The ALJ also rejected Guinn's complaints of more severe symptoms as inconsistent with the record evidence and Guinn's own presentation at the hearing.  These determinations are supported by substantial evidence.

## V.  CONCLUSION

For these reasons, the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards.  Accordingly, the decision of the Commissioner is due to be AFFIRMED.  A final judgment will be entered separately.

DONE and ORDERED on February 17, 2022.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE

---

[3] Guinn, for his own part, provided apparently contradictory testimony at the hearing about the efficacy of his medication regime. *Compare* R. 38 (testifying that his medications help him), *with* R. 50 (testifying that his condition is "worse with treatment and medication").